**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA KALKBRENNER,<br>JACOB W. GUIMOND,<br>and JOSHUA HARRIS,<br>on behalf of Plaintiffs and the class members<br>described below, | )<br>)<br>)<br>)<br>) | |
| | ) | Case No. 1:22-cv-00420 |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | Judge Dow<br>Magistrate Judge Kim |
| | ) | |
| WEST SIDE LENDING, LLC;<br>JENNIFER PETERS;<br>WOLF RIVER DEVELOPMENT COMPANY;<br>NEW PLATFORM FUND, LLC;<br>and JOHN DOES 1-20, | )<br>)<br>)<br>)<br>) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT – CLASS ACTION

1.      Plaintiffs Joshua Kalkbrenner, Jacob W. Guimond and Joshua Harris bring this action to secure redress from predatory and unlawful loans (such as Exhibits A, B, L and M).  The loans are made in the name of Defendant West Side Lending, LLC. Other parties involved in making the loans are Jennifer Peters, Wolf River Development Company, New Platform Fund, LLC, and John Does 1-20.

2.      Plaintiffs seek a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 et seq., and the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.  (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), treble damages under RICO (Count IV), and damages under the Illinois Wage Assignment Act (Count V).

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction under 28 U.S.C.  §1331, 18 U.S.C. §1964,

1

28 U.S.C. §1337, and 28 U.S.C. §1367. Jurisdiction may also exist under 28 U.S.C. §1332(d).

4. This Court has personal jurisdiction over each Defendant because they knowingly participated in the making of unlawful loans to Illinois residents.

5. Venue is proper because acts to obtain and collect the loans impacted Plaintiffs in the District.

## PARTIES

### Plaintiffs

6. Plaintiff Joshua Kalkbrenner is a resident of the Northern District of Illinois.

7. Plaintiff Jacob W. Guimond is a resident of the Northern District of Illinois.

8. Plaintiff Joshua Harris is a resident of the Northern District of Illinois.

### Defendants

9. Defendant West Side Lending, LLC is an online lender that offers loans to consumers at annual percentage rates of between 630% and 780%. (Exhibit C) It purports to be an entity formed under the laws of, and claims to be owned and controlled by, the Menominee Tribe of Wisconsin, a federally-recognized Indian Tribe. (Exhibit A, second page) It uses the address P. O. Box 687, Keshena, WI 54135. It also uses the address W2818 Warrington Road, Keshena, WI 54135.

10. West Side Lending, LLC operates through the website www.westsidelend.com. The domain registry for www.westsidelend.com is a nominee in Iceland (Exhibit D), which would not be necessary were it actually owned and controlled by the Menominee Tribe.

11. The fax number West Side Lending uses is 906-373-3033. The area code 906 is assigned to northern Michigan, where the Menominee Tribe has no territory, not Wisconsin.

12. The persons authorized to take mail from P. O. Box 687 on behalf of West Side Lending, LLC, include Defendant Jennifer Peters.

13. Defendant Jennifer Peters is the General Manager of the Wolf River Development Company, and describes her job as "to investigate, review, consider, pursue and conduct any non-

gaming activity for the Menominee Indian Tribe." (Exhibit E)

14.     Defendant Wolf River Development Company is an entity located at W2908 Tribal Office Loop Road, Keshena, WI 54135.

15.     The activities of the Wolf River Development Company include high-interest loans. (Exhibit F)

16.     Peters is also authorized to receive mail for Defendant New Platform Fund, LLC.

17.     Defendant New Platform Fund, LLC is an entity which uses the addresses W2818 Warrington Road, Keshena, WI 54135 and P. O. Box 1017, Keshena, WI 54135.

18.     Defendant New Platform Fund, LLC holds a security interest in all assets of West Side Lending, LLC (Exhibit G).

19.     West Side Lending, LLC is one of multiple high-interest lending entities supposedly owned by the Menominee Indian Tribe. Others include Moose Lending, LLC; Elk Lending, LLC; Fox Lending, LLC d/b/a Loop Fund; and East Line Lending LLC.

20.     All of these entities are operated by Wolf River Development Company through two subsidiaries, Four Directions Lending LLC and Five Clans Lending LLC (Exhibits H-I)

21.     New Platform Fund, LLC also holds a security interest in all assets of East Line Lending, LLC.

22.     On information and belief, the economic benefit of the activities of West Side Lending, LLC is received by non-Native American persons.

23.     West Side Lending, LLC does business in Illinois over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

24.     Defendants John Does 1-20 are other natural and artificial persons involved in the lending activities described herein, such as the persons who use the fax number 906-373-3033 and the persons responsible for www.westsidelend.com.

## FACTS RELATING TO PLAINTIFF KALKBRENNER

25.     On or about May 25, 2021, Plaintiff took out an installment loan from West Side Lending, LLC (Exhibit B). The loan had an amount financed of $1,500 and an annual percentage rate of 777.86%.

26.     Plaintiff repaid Exhibit B, with interest at the stated rate.

27.     On or about July 15, 2021, Plaintiff Kalkbrenner took out another installment loan from West Side Lending, LLC (Exhibit A). The loan had an amount financed of $2,450 and an annual percentage rate of 724.72%.

28.     Plaintiff has not been able to repay the loan.

29.     Exhibits A-B are written on a standard form loan agreement used by West Side Lending, LLC on a regular basis.

30.     Defendants regularly make loans to individuals in Illinois at such rates.

31.     The West Side Lending, LLC website lists states in which Defendants will not make loans. (Exhibit C, pp. 9-10) Illinois is not one of these states.

32.     The loan was obtained for personal, family or household purposes and not for business purposes.

33.     At no time have Defendants had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling them to make loans to Illinois residents at more than 9% interest.

34.     Defendants nevertheless advertise and make loans to Illinois residents at rates greatly exceeding 9%.

35.     Defendants sought out Illinois residents for such loans.

36.     On or about September 2, 2021, West Side Lending served a wage assignment demand on Plaintiff Kalkbrenner's employer.

37.     Prior to serving the wage assignment demand, West Side Lending did not provide advance notice to Plaintiff Kalkbrenner.

4

38.     On September 3, 2021, Plaintiff Kalkbrenner revoked his wage assignment (Exhibit J).

39.     Plaintiff Kalkbrenner had a right to revoke the wage assignment under the FTC Credit Practices Rule and 740 ILCS 170/4.1.

40.     On or about November 22, 2021, West Side Lending served another wage assignment demand on Plaintiff Kalkbrenner's employer. A copy is attached as Exhibit K.

41.     Prior to serving the wage assignment demand, West Side Lending did not provide advance notice to Plaintiff Kalkbrenner.

42.     The wage assignment lists a fax number for the sender of 906-373-3033, which is assigned to Northern Michigan.

43.     Defendants claim amounts are still owed on the loan.

### FACTS RELATING TO PLAINTIFF GUIMOND

44.     On or about December 2, 2021, Plaintiff Guimond took out an installment loan from West Side Lending, LLC (Exhibit L). The loan had an amount financed of $1,500 and an annual percentage rate of 764.95%.

45.     The loan was obtained for personal, family or household purposes and not for business purposes.

46.     Plaintiff Guimond has made payments on the loan.

47.     Defendants claim amounts are still owed on the loan.

### FACTS RELATING TO PLAINTIFF HARRIS

48.     On or about July 29, 2020, Plaintiff Harris took out an installment loan from West Side Lending, LLC (Exhibit M). The loan had an amount financed of $975 and an annual percentage rate of 765.89%.

49.     The loan was obtained for personal, family or household purposes and not for business purposes.

50.     Plaintiff Harris has made a payment on the loan.

51.     Defendants claim amounts are still owed on the loan.

**ILLINOIS PROHIBITIONS ON PREDATORY LOANS**

52.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%.  815 ILCS 123/15-1-1 et seq.  "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan."  815 ILCS 123/15-5-10.

53.     Under 815 ILCS 123/15-10-5(b), "Any violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

54.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and  Professional Regulation to make loans at more than 9% interest.  815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

55.     Any loans to Illinois residents at more than 9% that  are made by unlicensed persons are void and unenforceable.  205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.");  815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

56.     Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS

205/6.

57. Illinois has a criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 et seq). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State". 720 ILCS 5/1-5.

58. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

59. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), *In the Matter of Money Mutual, LLC,* No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/MoneyMutualCDOrder12CC408.pdf); *In the Matter of Hammock Credit Services,* No. 12 CC 581 (https://www.idfpr.com/dfi/ccd/Discipline/HammockCreditCDOrder12CC581.pdf); *In the Matter of Makes Cents, Inc., d/b/a Maxlend,* No. 17 CC 133 (https://www.idfpr.com/dfi/CCD/Discipline/17CC133%20-%20Make%20Cents%20dba%20Maxlend%20Cease%20and%20Desist%20Order%20Bob%208%2016%202017.pdf)

## RENT-A-TRIBE SCHEMES

60. In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal

owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

61.    In such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

62.    The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

63.    In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

64.    However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

65.    To determine if a particular entity is entitled to sovereign immunity, the  majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

66.    These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively

nil.

67.    Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

68.    Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

69.    Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies.  *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y.  The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

70.    Telltale indicia of a "rent-a-tribe" scheme are the fact that telephone numbers and websites used by the lending scheme are identified with locations not connected with the tribe.

## COUNT I - DECLARATORY AND INJUNCTIVE
## RELIEF AGAINST ILLEGAL CONDUCT

71.    All Plaintiffs incorporate paragraphs 1-70.

72.    This claim is against all Defendants.

73.    There is a controversy between Plaintiffs and the class, on the one hand, and Defendants, on the other, as to whether Plaintiffs must repay the loans made to them.

74.    Declaratory relief will resolve such controversy.

75.    An injunction is necessary to prevent Defendants from taking any action to collect

the void debts.

## CLASS ALLEGATIONS

76.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(2).

77.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of West Side Lending, LLC at more than 9% interest (c) which loan has not been paid in full.

78.     Plaintiffs may alter the class definition to conform to developments in the case and discovery.

79.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

80.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

81.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

82.     Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

83.     Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

84.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and

10

against Defendants for:

        i.      Injunctive relief;

        ii.     Declaratory relief;

        iii.    Restitution of all amounts collected on the loans from members of the class;

        iv.    Costs of suit; and

        v.     Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

85.     All Plaintiffs incorporate paragraphs 1-70.

86.     This claim is against all Defendants.

87.     Defendants contracted for and collected loans at more than 9% interest from Plaintiffs and the class members, in violation of 815 ILCS 205/4.

88.     Plaintiffs and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

89.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

90.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of West Side Lending, LLC at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

91.     Plaintiffs may alter the class definition to conform to developments in the case and discovery.

92.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

93.     There are questions of law and fact common to the class members, which

common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

94.     Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

95.     Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

96.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible.

      b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

      i.     Damages as provided in 815 ILCS 205/6.

      ii.     Attorney's fees, litigation expenses and costs of suit; and

      iii.     Such other and further relief as the Court deems proper.

## COUNT III – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

97.     Plaintiffs Kalkbrenner and Guimond incorporate paragraphs 1-70.

98.     This claim is against all Defendants.

99.     Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

100.     Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.

## CLASS ALLEGATIONS

101.     Plaintiffs Kalkbrenner and Guimond bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

102.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of West Side Lending, LLC at more than 36% interest (all of its loans qualify) (c) on or after March 23, 2021.

103.    Plaintiffs may alter the class definition to conform to developments in the case and discovery.

104.    The class is so numerous that joinder of all members is not practicable.  On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

105.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

106.    Plaintiffs will fairly and adequately represent the class members.  Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

107.    Plaintiffs' claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

108.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible.

    b.    Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

        i.      Compensatory damages;

        ii.     Punitive damages;

        iii.    Attorney's fees, litigation expenses and costs of suit; and

        iv.     Such other and further relief as the Court deems proper.

13

## COUNT IV – RICO

109.    All Plaintiffs incorporates paragraphs 1-70.

110.    This claim is against Peters, who is the RICO "person."

111.    All loans made in the name of West Side Lending, LLC to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

112.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

113.    West Side Lending, LLC is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

114.    Defendant Peters is associated with this enterprise.

115.    Defendant Peters conducted or participated in the conduct of the affairs of West Side Lending, LLC through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

116.    Plaintiffs were deprived of money as a result.

## CLASS ALLEGATIONS

117.    Plaintiffs bring this claim on behalf of a class.

118.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of West Side Lending, LLC at more than 9% interest (c) which loan was made on or after a date 4 years prior to the filing of suit.

119.    Plaintiffs may alter the class definition to conform to developments in the case and discovery.

120.    The class is so numerous that joinder of all members is not practicable.  On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

121.    There are questions of law and fact common to the class members, which

14

common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.      Whether the loans at issue are "unlawful debts" as defined in RICO.

      b.      Whether West Side Lending, LLC is an "enterprise."

      c.      Whether Defendant Peters is associated with West Side Lending, LLC.

      d.      Whether Defendant Peters conducted or participated in the affairs of West Side Lending, LLC through a pattern of making and collecting unlawful loans.

122. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

123. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

124. A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.      Individual actions are not economically feasible.

      b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

      i.      Treble damages;

      ii.      Attorney's fees, litigation expenses and costs of suit; and

      iii.      Such other or further relief as the Court deems proper.

## COUNT V – ILLINOIS WAGE ASSIGNMENT ACT

125. Plaintiff Kalkbrenner incorporates paragraphs 1-70.

126. This claim is against all Defendants.

127. The Illinois Wage Assignment Act, 740 ILCS 170/.01 ("IWAA"), provides that an assignment of wages earned or to be earned is not valid unless it is (740 ILCS 170/1):

      a.      Made in a written instrument, signed by the wage-earner in person,

b. Bearing the date of its execution, the social security number of the wage-earner, the name of the employer of the wage-earner at the time of its execution, the amount of the money loaned or the price of the articles sold or other consideration given, the rate of interest or time-price differential, if any, to be paid, and the date when such payments are due.;

c. The words "Wage Assignment" are printed or written in bold face letters of not less than 1/4 inch in height at the head of the wage assignment and also one inch above or below the line where the wage-earner signs that assignment;

d. The assignment is written as a separate instrument complete in itself and not a part of any conditional sales contract or any other instrument.

128. The purported wage assignment in Exhibit K does not comply.

129. The IWAA provides (740 ILCS 170/2) that a demand for wages may not be served on an employer unless:

a. There has been a default of more than 40 days in payment of the indebtedness secured by the assignment and the default has continued to the date of the demand;

b. The demand contains a correct statement as to the amount the wage-earner is in default and the original or a copy of the assignment is exhibited to the employer; and

c. Not less than 20 days before serving the demand, notice required under Section 2.2 [740 ILCS 170/2.2] has been served upon the employee, and an advice copy sent to the employer, by 2 methods: (i) first class mail; and (ii) registered or certified mail.

130. Defendants did not comply with these requirements.

131. Demands must be in the form set forth in 740 ILCS 170/2.1. The demand served

16

by Defendants was not.

132. The amount that may be demanded is set forth in 740 ILCS 170/4. The demand served by Defendants did not comply.

133. 740 ILCS 170/4.3 provides that "If any person wrongfully: (1) serves a notice on an employee or serves a notice which does not conform with the requirements of Section 2.2 [740 ILCS 170/2.2], (2) causes a demand to be served for the wages of an employee, or (3) fails to release a demand, he shall be liable to the employee and the employer for statutory damages in the sum of $500 and all actual damages occasioned by such action including reasonable attorney's fees."

134. Plaintiff Kalkbrenner was injured when Defendants informed his employer of a demand for his wages.

## CLASS ALLEGATIONS

135. Plaintiff brings this claim on behalf of a class.

136. The class consists of (a) all individuals with Illinois addresses (b) with respect to whom a demand under a wage assignment was made in the name of West Side Lending, LLC (c) on of after a date 2 years prior to the filing of this action.

137. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the use of form documents, there are at least 40 class members.

138. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.      Whether Defendants' form of wage assignment comports with the IWAA;

      b.      Whether Defendants' form of demand comports with the IWAA;

      c.      Whether Defendants provide advance notice as required by the IWAA.

139. Plaintiff Kalkbrenner will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

140. Plaintiff's claim is typical of the claims of the class members. All are based on the

same factual and legal theories.

141.     A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.     Individual actions are not economically feasible.

    b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and

against Defendants for:

    i.     Statutory and actual damages;

    ii.     Attorney's fees, litigation expenses and costs of suit; and

    iii.     Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6297473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

18

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

19

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman